UNITED STATES of America

v.

Malcolm R. PETAL.

Criminal Action No. 08–176.

United States District Court,
E.D. Louisiana.

April 22, 2009.

Assistant U.S. attorneys Eileen Gleason, Matt Chester, Dall Kammer, and Peter Mansfield for the government.

## ORDER

LANCE M. AFRICK, District Judge.

Malcolm Petal ("Petal") pled guilty on December 12, 2008 to a superseding bill of information charging him with conspiracy to bribe a state official. A sentencing hearing is set for April 23, 2009.

Four putative victims have submitted claims in this case pursuant to the Mandatory Victims Restitution Act of 1996

("MVRA"). They are: (1) Michéle Le-Blanc ("LeBlanc");[1] (2) Ralph L. Fletcher ("Fletcher"); (3) Oley Sassone ("Sassone"); and (4) Lonny Kaufman ("Kaufman"). These individuals seek to recover for financial losses which they allege were the result of certain acts by Petal. The government and Petal oppose the restitution requests.

## I. MVRA'S COMPLEXITY PROVISION

Both the government and Petal argue that the Court need not provide restitution pursuant to 18 U.S.C. § 3663A(c)(3)(B). Section 3663A(c)(3)(B) provides that for offenses against property, the MVRA shall not apply

> if the court finds, from facts on the record, that
>
> . . .
>
> determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim

is outweighed by the burden on the sentencing process.

Based upon the claimants' submissions and supporting financial documents, the Court finds that any determination of the putative victims' losses in this case would entail resolution of complex issues of fact related to the cause and amount of their losses. The Court must further determine whether the burden imposed by this task would outweigh the need, if any, to provide restitution to the putative victims. In order to answer this question, the Court must first decide whether the putative victims are indeed "victims," as recognized by the MVRA. If they are not victims of Petal's crime, then there is obviously no need to provide restitution.

## II. MVRA "VICTIMS"

The MVRA mandates restitution to a "victim," which it defines as a "person *directly and proximately harmed* as a result of the commission of an offense."[2] 18 U.S.C. § 3663A(a)(2) (emphasis added). The U.S. Supreme Court, interpreting MVRA's predecessor statute, the Victim and Witness Protection Act of 1982 ("VWPA"),[3] held that "the language and

---

**1.** LeBlanc's claim is submitted on behalf of Art & Entertainment Law Group of LeBlanc & Associates, PLC ("AEL"), of which LeBlanc is the senior partner, and PFF VIII, L.L.C. ("PFF"), of which LeBlanc is the manager.

**2.** The MVRA also mandates restitution to "persons other than the victim of the offense" if the parties have agreed upon such restitution in a plea agreement. 18 U.S.C. § 3663A(a)(3). The paragraph of Petal's plea agreement concerning restitution states, in full:

> It is also understood that the restitution provisions of Section 3663 and 3663A of Title 18, United States Code will apply and the defendant agrees that any restitution imposed will be non-dischargeable in any bankruptcy proceeding and that defendant will not seek or cause to be sought a discharge or a finding of dischargeability as to the restitution obligation. The defendant further acknowledges that restitution is appropriate in this case and agrees to pay

restitution to the State of Louisiana in the amount of $1.35 million.

R. Doc. No. 33, plea agreement at 2. This paragraph contains no agreement between Petal and the government to provide restitution to any person or entity other than the State of Louisiana. Therefore, § 3663A(a)(3) is inapplicable in this case.

**3.** The fact that the *Hughey* cases concerned interpretations of the VWPA, rather than the MVRA, does not affect the present analysis. The Fifth Circuit has noted that "[a]lthough the Supreme Court's decision in *Hughey I* predated the enactment of the MVRA, and the VWPA was amended in several respects after *Hughey I*, this court has long recognized that: (1) the *Hughey I* court's holding that restitution must be limited to losses caused by the offense of conviction remains good law; and (2) the rule of *Hughey I* also applies to cases arising under the MVRA." *United States v. Maturin,* 488 F.3d 657, 661 (5th Cir.2007) (citations omitted).

structure of the Act make plain Congress' intent to authorize an award of restitution *only for the loss caused by the specific conduct* that is the basis of the offense of conviction." *Hughey v. United States,* 495 U.S. 411, 413, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990) (*Hughey I*) (emphasis added). Following the decision in *Hughey I,* Congress amended the VWPA to provide "that when the subject offense involves a scheme, conspiracy, or pattern of criminal activity, restitution may be awarded to any person who is directly harmed by the defendant's course of criminal conduct." *United States v. Hughey,* 147 F.3d 423, 437 (5th Cir.1998) (*Hughey II*). Notwithstanding Congress's expansion of the category of eligible victims, "[t]hat part of *Hughey [I],* which restricted the award of restitution to the limits of the offense ... still stands." *Id.*

▪ The Court must, therefore, determine what "specific conduct" by Petal is the basis of his conspiracy conviction. In a case where the defendant's conviction is pursuant to a plea agreement, the Court "looks beyond the charging document, and defines the underlying [conspiracy] by referring to the mutual understanding of the parties," which may be determined by reference to the charging document, the factual basis, the plea agreement, and any statements made during the plea hearing. *United States v. Adams,* 363 F.3d 363, 366–68 (5th Cir.2004).

With respect to duration, the Court finds that Petal's conspiracy endured from late 2002 until December, 2004. The superseding bill of information alleges that the conspiracy began "at a time unknown but prior to on or about December 8, 2003, and continuing through in or about December 2004." [4] According to the factual basis, Mark Smith ("Smith"), director of the Governor's Office of Film and Television Department, introduced Petal to co-conspirator William Bradley ("Bradley") in late 2002. Petal hired Bradley in late 2003 "to assist him in obtaining certification for tax credits for Break Beat LLC." [5] On December 8, 2003, the State of Louisiana certified $1.35 million in tax credits for Break Beat LLC ("Break Beat").[6] Petal eventually paid Bradley $135,000; the superseding bill of information alleges that this payment occurred between January 5, 2004 and November 29, 2004.[7] Bradley then paid Smith half of the $135,000, no later than "in or about December 2004." [8]

With respect to scope, the Court finds that Petal's criminal conduct related solely to his actions as a principal of Break Beat in its attempt to gain state-certified tax credits. Although the factual basis states that Smith initially approached Petal in his capacity as principal of LIFT, LLC ("LIFT"), it also states that Petal hired Bradley "to assist him in obtaining certification for tax credits for Break Beat." [9] Break Beat was a Louisiana limited liability company "which applied for tax credits for the filming of live music festivals in 2002 and 2003." [10] The factual basis further states that Petal's hiring of Bradley coincided with Break Beat's attempts to "get tax credits certified for the filming of a music festival" and that Smith's approval of Break Beat as a "state-certified production" specifically enabled it to "apply for certification of tax credits based on actual expenditures *associated with the pro-*

---

4. R. Doc. No. 29, superseding bill of information at 3.

5. R. Doc. No. 34, factual basis at 3.

6. *Id.* at 4.

7. Superseding bill of information at 4.

8. *Id.*

9. Factual basis at 3.

10. *Id.* at 2.

*ject.*[11] The factual basis does not explicitly link the $1.35 million of tax credits to the 2002 and 2003 live music festivals. However, upon review of the superseding bill of information and factual basis, the Court finds that the specific criminal conduct to which Petal pled guilty was related solely to Break Beat's attempt to gain tax credits for those music festivals.

## III. NATURE OF THE PUTATIVE VICTIMS' CLAIMS

Turning to the claimants in this case, the Court finds that none have raised valid claims for restitution under the MVRA. The Court briefly assesses the claim of each putative victim.

### A. Lonny Kaufman

■ Kaufman seeks $197,000 from Petal. Kaufman states that his company, Satchmo Productions LLC ("Satchmo"), owes the Small Business Administration ("SBA") $102,000. Kaufman further states that he withdrew (and presumably expended) over $95,000 from his personal savings in order to sustain Satchmo. The SBA loan was taken out in the fall of 2005 and the savings withdrawals occurred from January, 2006 until July, 2006.

Clearly, these alleged losses occurred after the criminal conspiracy to which Petal pled guilty. In addition, the Court notes that Kaufman is silent about Petal's criminal conduct in connection with Break Beat. Indeed, Kaufman does not make any claim that Petal caused his losses. Instead, Kaufman refers obliquely to LIFT and its allegedly privileged position within the Louisiana film industry.

The Court has no trouble concluding that Kaufman was not directly and proximately harmed as a result of Petal's criminal conspiracy.

### B. Ralph L. Fletcher

Fletcher seeks $194,133 from Petal. These include expenses Fletcher incurred for operational expenses of his company, Hollywood South, L.L.C. ("Hollywood South"). Fletcher makes a general reference to "the criminal activity" of Mark Smith, Malcolm Petal, and William Bradley as the reason Hollywood South was unable to obtain business. Fletcher further attributes his losses to Smith's involvement with LIFT, without specifying what, if any, conduct of Petal caused his losses. Finally, by Fletcher's own admission, Hollywood South was not formed until January, 2005, after Petal's criminal conspiracy had concluded.

Fletcher was not directly and proximately harmed as a result of Petal's criminal conspiracy.

### C. Oley Sassone

Sassone seeks $3,242,242 from Petal. This figure represents estimated lost production revenue, lost tax credit revenue, and miscellaneous office expenses. Sassone's allegations do not relate to the specific criminal conduct to which Petal pled guilty. Sassone states that Petal and LIFT had prior knowledge of all Louisiana-bound film projects and that LIFT submitted inflated production budgets to Smith. Sassone further details various feature film productions between 2004 and 2006 which worked with LIFT rather than Sassone and an aborted attempt to build a soundstage production facility in New Orleans East.

The harm for which Sassone seeks to recover was not directly and proximately caused by Petal's criminal conspiracy. Sassone does mention Break Beat in his letter to the Court, but does not explain how his losses were proximately caused by Petal's criminal conduct in connection with Break Beat.[12]

---

11. *Id.* at 2–3.

12. On April 17, 2009, Sassone submitted a letter to the Court in response to Petal's oppo-

### D. *Michéle LeBlanc*

LeBlanc seeks over $900,000 from Petal. This amount comprises financial losses to her companies AEL and PFF. LeBlanc refers to the "Petal Scheme" rather than the specific conduct underlying Petal's conspiracy conviction. The "Petal Scheme" involves a significantly broader range of alleged conduct than the criminal conspiracy to which Petal pled guilty. Like the other claimants, LeBlanc attempts to characterize an overall scheme—broader than the criminal conspiracy—as the cause of her losses.

The Court finds that LeBlanc, AEL, and PFF were not directly and proximately harmed by the specific criminal conduct to which Petal pled guilty.

### IV. CONCLUSION

Because none of the claimants were directly and proximately harmed by the specific conduct comprising the criminal conspiracy to which Petal pled guilty, they are not cognizable victims under the MVRA. Because there is no need to provide restitution to claimants, the question of the burden upon the Court of determining their loss is moot.

 The Court notes that claimants have alleged that through his relationship with Smith, Petal created a stranglehold on the Louisiana film industry. They argue that Petal's position deprived them of the opportunity to earn significant revenues. The government, however, has not charged, let alone proven, the allegations made by claimants. Petal cannot be ordered to pay restitution based on an allegedly criminal activity for which he has not been convicted.

 The Court also notes that the MVRA does not specifically authorize restitution for the victim of a property crime's lost income. Reimbursement of the victim for his lost income is authorized by 18 U.S.C. § 3663A(b)(2)(C) when the offense resulted in bodily injury to a victim. There is no similar statutory authorization for those offenses which resulted in loss of property.

Accordingly,

**IT IS ORDERED** that the restitution claims of LeBlanc, Sassone, Fletcher, and Kaufman are **DENIED.**

**IT IS FURTHER ORDERED** that the motion to deny standing,[13] filed on behalf of Petal, is **DISMISSED AS MOOT.**

---

sition brief. Sassone takes issue with, *inter alia,* the characterization of the claimants as "parties who have never before or since had successful production companies." Petal's mem. opp'n at 7. The Court agrees that Pe-

tal's brief needlessly and inappropriately impugns the film careers of the claimants, including Sassone.

**13.** R. Doc. No. 77.